## Case No. 8,249.

### LENOX et al. v. WRIGHT.

[2 Cranch, C. C. 45.] [1]

Circuit Court, District of Columbia. June Term, 1812.

BILLS AND NOTES — NOTICE TO INDORSER — TIME ALLOWED—DELIVERY TO POST OFFICE.

Upon a note due 23d and 26th July, demand and notice after the 28th are too late; but demand and notice on the 27th is not.

[See Bank of Alexandria v. Wilson, Case No. 856; Bank of the Metropolis v. Walker, Id. 903.]

Assumpsit against the indorser of a promissory note due 23d and 26th July, 1809. The defendant lived in Georgetown, D. C., about three miles from the plaintiffs.

---

LENT (UNITED STATES v.). See Case No. 15,593.

---

## Case No. 8,250.

### The LEO.

[3 Ben. 569.] [2]

District Court, E. D. New York. Dec., 1869.

COLLISION IN A SLIP — PROPELLER'S SCREW—NOTICE—COSTS.

1. A canal-boat was moored at a bulkhead, by lines sufficient to enable her to withstand all the ordinary forces of wind and tide. A large propeller, with a screw 11 feet 9 inches in diameter, was lying at the pier, with her stern towards the canal-boat, and 40 to 75 feet distant. A short time before the sailing of the propeller, her engine was put in motion, making about 30 revolutions a minute. This was done without any notice to the canal-boat, and the current made by her screw parted the canal-boat's fasts, whirled her round in the slip three times, and drove her against the bulkhead with such force as to sink her: Held, that the propeller had no right to set in motion such a current of water, in a crowded slip, without, in some way, notifying vessels likely to be affected by it, so as to give them opportunity to protect themselves from it, by getting out extra fasts, and that the propeller was liable for the damages.

[Cited in The Daniel Drew, Case No. 3,565.]

2. The question being a new one, no costs were awarded against the propeller.

In admiralty.

O. Frisbie, for libellant.

J. K. Murray, for claimant.

BENEDICT, District Judge. This is an action brought to recover of the steamer Leo, the value of the canal-boat Almira, sunk in the slip at pier 16, in the East river, on the 13th of April, 1869.

As to the facts, there is little dispute. They are as follows: The canal-boat was moored at pier 16, and was there securely fastened to the bulkhead, by two strong lines, sufficient to enable her to withstand all the ordinary forces of wind or tide.

The Leo, an ocean propeller, having a screw 11 feet 9 inches in diameter, was lying, at the same time, at pier 16, her stern towards the canal-boat, and from 40 to 75 feet therefrom. On the 13th of April, which was the sailing day of the steamer, and about three-quarters of an hour before her sailing hour, the Leo, while moored as above described, started her screw, which was caused to revolve at the rate of about 30 revolutions per minute. The water was low, and this action of the screw threw a strong current of water directly towards the bulkhead, at which the canal-boat was moored, with sufficient force to part the lines holding the canal-boat, which was whirled around in the slip some three times, in spite of the efforts of the crew to check her, and then driven against the bulkhead, whereby she was so injured that she sank and was wholly lost. No notice, of any kind, was given from the propeller, of her intention to start her screw, but, as soon as those on board were notified that the canal-boat had broke loose, the screw was stopped—not, however, in time to prevent the accident which followed.

These facts present a novel question, as to the proper mode of using the large screws, which have, of late, to so great an extent, superseded side-wheels, as the propelling power of ocean steamers. It would appear, from the evidence in this case, that it is a usual precaution, adopted by ocean steamers in this port, just before starting for sea, to slowly work their engines for a while, in order to ascertain their exact condition, and insure their being in proper running order, when the ship proceeds to sea. With side-wheels, this action of the engines, while the vessel is fast in the slip, does not seem to have been attended with any considerable danger to other vessels in the same slip; at least, I have never known of any such cases, and feel quite confident that I should have known, if such had occurred with any considerable frequency. That no damage has arisen from this practice of the side-wheel steamers, is owing, no doubt, to the fact, that side-wheels, while they move only the surface of the water, are also near midship, and the force of the current caused by them is, therefore, much broken before it reaches the stern. But the screw is at the stern, and it there combines, at a single point, all the power which, in side-wheels, is distributed between the two wheels. It is, moreover, under water, and, when in motion, its necessary effect is, to drive a

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

column of water directly aft. This current of water, which acts with sufficient power to propel the large vessel at high speed, against the heavy head-seas of the ocean, of course, when the steamer is fast to the wharf, is driven aft the vessel with very great force, and, almost necessarily, involves danger to surrounding vessels, as the facts of this case, as well as those in the case of The Washington, 2 Marit. Law Cas. 23, clearly show. And a question might, perhaps, arise, as to the legal right of any vessel to set in motion, in the crowded slips of this port, a force so powerful. Such action is expressly forbidden in the river Thames. See Thames Conservatory By-Laws, 1860. But, upon the evidence in this case, the question is narrowed to determining whether such a force can be set at work, without giving previous notice to surrounding vessels, so as to enable them to protect themselves against it. To such a case, the maxim, "sic utere tuo, ut alienum non laedas," applies, and it must be held that, if the propellers have any right at all to turn their screws, when the vessel is fast in the slip, it is certainly accompanied with the duty of, in some way, notifying vessels likely to be affected, so as to give them the opportunity, by getting out extra lines, or otherwise, to protect themselves against the current, which must flow from the motion of the screw.

In the present case, it is not pretended, that any previous notice of intention to set the screw in motion was given by the steamer, and she must, accordingly, be held liable for the damage which ensued.

On account of the novelty of the question raised, I award no costs against the steamer.