## THE SYRACUSE.

A large steamer, without tows or other incumbrance, approaching near to smaller ones with tows, under circumstances where collision is liable to occur, is bound to move with caution. She is mistress of her course and motions, and stands in a position of advantage over the others. These have not full power over themselves. Seventeen miles an hour, in such a situation, is too great a rate of speed for the larger and freer vessel to be moving at among vessels having tows.

THIS was an appeal in admiralty from the decree of the Circuit Court for the Southern District of New York, which, on a libel filed by the owners of the steamer Rip Van Winkle, against the steam tow-boat Syracuse, for a collision, had held the complaining boat itself in fault, and the tug-boat not liable.

*Messrs. McMahon and Hoar, for the appellant; Mr. Benedict, contra.*

Mr. Justice SWAYNE stated the facts and delivered the opinion of the court. Both will be better understood by reference to a diagram by the reporter on the next page.

The steamer Rip Van Winkle, a freight and passenger

---

* The William Bagaley, 5 Wallace, 412.

boat, left New York for Troy, heavily laden, on the evening
of the 15th of May, 1866.   About 2 o'clock the next morn-
ing she reached a point in the river opposite to Brandow's
Hollow.   There, three boats above were plainly in view to
her, and she was as plainly in view to them.   They were all
tow-boats with barges attached, and were the Johnson, the.
Arnold, and the Syracuse.   The Arnold was on the east side
of the river, and going up.   The Johnson was on the west

side, going down, and was as near to the flats as it was safe
for her to go.   The Syracuse was on the west side, and also
descending.   She had in tow, lashed to her, on the port side,
the heavy ice barge Colgate.   The Roberts, a light barge,
was attached to her in like manner on the starboard side.
The speed of the Johnson was less than that of the Syracuse.
The Johnson had nine tows, attached by a hawser about

four hundred and fifty feet long. The Syracuse made a sheer and passed the hawser-tier of the Johnson, and lapped her about fifteen feet on the east side. About this time the Rip Van Winkle blew a long whistle as a signal that she intended to pass them to the eastward. They blew their whistles in response and assent. The speed of the steamer was seventeen miles an hour. The distance of the Syracuse and the steamer from each other when their whistles blew was probably about half a mile. The usual course of ascending steamers at that point, and the one which the Rip Van Winkle proposed to pursue, was diagonally across the river from the west to the east side. Teason was the pilot in charge of the steamer, and we give the occurrences which grew out of this movement as he states them. He says:

" We passed the Johnson, and on her starboard side was the Arnold, bound up with a tow. I went close to his hawser-tier, and probably within fifty or seventy-five feet. The tide being flood-tide, and the wind southeast, he was working to the windward, and the tier tailed off from him, so that I did not go as close to the Arnold as I did to his hawser-tier. I went off from the Arnold probably one hundred and fifty feet, may be not as far as that, and just as I got abreast, or just before I got abreast of the Arnold, the steamer Syracuse, bound down, on our larboard hand, altered her course before I got to the Arnold, and came right head towards us. I didn't slow the boat nor I didn't stop her. . . . I let her keep her regular gait. . . . I thought I could outrun her when I saw her coming. I thought, in the position she was, I could get by her, and I hove my wheel over aport, and that took us hard off more to the eastward. I thought I would let her get as far to the eastward as I could, and did so. Then the Syracuse hit us . . . on the starboard side, just aft of the forward gangway. . . . It was the barge that she had alongside that hit us—hit us with the bluff of her bow, right on the turn of her bow. We were heading to the east, and she struck us right aft of the forward gangway, and forward of the paddle-box, and after she struck us it carried away our deck-beams, and side-house, and water-wheel, and the like of that; that disabled our engine, and then we drifted, till in time we drifted ashore, or we let our anchor go before we got

ashore, but our anchor would not hold us, and we drifted ashore; we drifted about twenty minutes or half an hour after she struck us before we went ashore."

This witness further states that the width of the channel between the Arnold and the Johnson was at least five hundred feet; that there was a space between the Johnson and the steamer for the Syracuse to pass of three hundred and fifty feet; that the steamer had passed the Johnson and the Arnold, and that just as she passed the latter the disaster occurred. The length of the steamer was about two hundred and seventy-five feet. The combined speed of the steamer and the Syracuse was over twenty miles an hour. It was not less than half a mile in a minute and a half. Teason says:

" Further, that the Syracuse could have kept her course and followed down the same course that the Johnson was going, and would have given us plenty of room to have gone by. All that was necessary for her to clear us would have been to have kept her course. . . . She sheered right off—took a very sudden sheer right off towards us."

This witness is mainly relied upon by the libellant. Conceding his testimony to be correct it inculpates the tug, but by no means exonerates the steamer. The channel was narrow and crowded. The Johnson, Arnold, and Syracuse, with their tows, made a fleet of eighteen vessels of different kinds. Witherwax, another pilot on the steamer, says:

" We seen the river full of lights; it looked to be all light away across the river."

He warned Teason several times that the steamer would approach the Syracuse. His warnings show that he was alarmed. They produced no effect. A tug with vessels in tow is in a very different condition from one unincumbered. She is not mistress of her motions. She cannot advance, recede, or turn either way at discretion. She is bound to consult their safety as well as her own. She must see that what clears her of danger does not put them in peril. For

many purposes they may be regarded as a part of herself. They have the benefit of her traction and she the burden of their inertia. The character of the fleet could not be mistaken. The attempt of the steamer, under such circumstances, to pass the other vessels, and in such close proximity to the Syracuse, at a speed of seventeen miles an hour, was gross and wanton recklessness. Before turning her head to the eastward she should have slowed her engine. If the prospect of danger darkened she should have stopped, and, if need be, have reversed it. She had no right thus to hurl herself like a projectile into the midst of the vessels before her, taking the hazard of the consequences and thus imperilling herself and them with all the lives and property on board. "The Rule of the Road" gives no warrant for such conduct. The maxim applies, "*Sic utere tuo ut alienum non lædas.*" The steamer is condemnable alike upon reason and authority.*

The alleged fault of the Syracuse lies in the sudden sheer to the eastward which is imputed to her. As soon as her whistle was blown she stopped her engine, and did not put it in motion again until after the collision occurred. This is conclusively proven, and is not denied. It is an important fact in her favor. That she voluntarily and unnecessarily sheered, and put herself in the way of the steamer, as charged, is very improbable. The fact is proven by no one but Teason. It was several times denied expressly by Witherwax when his deposition was first taken. He was recalled the next day, and then stated that he saw the sheer and supposed it was to enable the Syracuse to pass the tow of the Johnson, and that she kept her course afterwards until she struck the steamer. The denials in his former examination detract from the weight of this testimony. The captain and pilot of the Syracuse contradict positively the statement of Teason. The pilot thinks she did not sheer either way after the steamer came in sight. He says she might have headed a

---

* The New Jersey, Olcott, 444; The Rose, 2 W. Robinson, 3; Holt's Rule of the Road, 227, 247.

little to the westward.   The captain of the Colgate saw her sheer to the westward as soon as her engine was stopped. He says the Colgate had a tendency to pull her in that direction.   The wind and tide both contributed to that result. The testimony of these officers outweighs that of Teason, which has no support from any other witness.   The stem of the Colgate was twenty feet aft of the stem of the Syracuse. The steamer in crossing headed to the eastward.   If, as is alleged, the sudden sheer of the Syracuse brought her into the track of the steamer, and thus produced the collision, the blow must necessarily have been given by the stem of one steamer or the other.   Such was not the result.   The stem of neither touched the other.   The steamer struck her port forward gangway against the bluff of the bow of the Colgate, ten feet aft the stem of the latter.   This is entirely irreconcilable with the testimony of Teason, and is fatal to the theory which it is relied upon to support.   That theory is the sole ground of imputation against the Syracuse. Other views vindicating the Syracuse with more or less of cogency might be presented, but we deem it unnecessary to pursue the subject further.   In our judgment the Syracuse is not shown to have been in fault.

DECREE AFFIRMED.