## THE DREW, etc.

*(District Court, S. D. New York.  December 30, 1884.)*

1. RIVER NAVIGATION—PASSING VESSELS—SWELL AND SUCTION.

   A steam-boat passing in the vicinity of other craft in shallow water is bound to use all reasonable precautions to avoid doing them injury from the known suction and swell she causes.  Other boats are also bound to avoid places dangerously near the usual track of such steamers.

2. SAME—CASE STATED.

   The libelant's barge was moored along spiles near the eastern side of the Hudson, at Castleton, in shallow water, where the bottom was stony.  The usual practice was to move such boats before the time of the passage of large steamers, but, having got aground, the libelant's barge could not be removed. The steamer D., coming down about 9 P. M., and perceiving signals by shaking lanterns and other evidence of difficulty ahead, slowed, but did not pass any further to the westward, which she might easily have done, and, when abreast of the barge, she resumed her former speed; and the suction and swell from her passing caused a break in the bottom of the barge.  *Held,* that the D. was chargeable with fault in not doing all that was reasonably within her power to avoid doing injury, and that the barge was also in fault in being allowed to ground and remain in a place known to be dangerous; and the damages were therefore divided.

In Admiralty.

*Hyland & Zabriskie,* for libelant.

*W. P. Prentice,* for claimants.

BROWN, J.  In May, 1883, the libelant's barge Greenback was moored about half a mile below Castleton along-side of three bunches of spiles about 20 feet distant from the bulk-head or dike which there forms the eastern shore of the Hudson river.  During the day she had been loaded with ice, and had grounded so as not to permit of her being taken away by a tug, as was intended.  About 9 o'clock in the evening the large steamer, the Drew, passed down in her usual course about 100 yards outside of the barge.  The water being shallow, the considerable suction and swell accompanying her passage caused a sudden lifting and settling of the barge, enough to make a somewhat heavy shock.  Ten minutes afterwards the barge was found rapidly filling with water, from which she sank.  Subsequent examination disclosed two holes or breaks in her bottom a little forward of amid-ships.  This libel was filed to recover the damages, charging that they were caused by the negligence and improper management of the Drew in passing.  The evidence shows that the bottom where the barge was moored was not soft or even, but that some stones had been washed there from broken-down portions of the dyke a little above.  It is possible, also, that there were some remains of the ends of broken spiles, though the evidence on this point is less conclusive.  The stones, however, were sufficient to make it dangerous for the barge to lie with any considerable part of her weight resting upon the bottom.  Had the water fallen low enough to cause a considerable portion of the weight of the barge with her cargo to rest

on such stones after grounding, it would be quite possible that the holes in the bottom might have been occasioned by this cause, wholly independent of the passing of the Drew. But the proof hardly warrants this supposition. The libelant testifies that the barge was not aground forward, although the contrary is stated by the pilot of the tug, who endeavored to move her. It is evident that the barge was but slightly aground; that is, that the water was almost sufficient to float her, and hence sustained most of her weight. The leak was discovered very shortly after the Drew passed, and after the heavy fall of the barge upon the bottom, in connection with the swell and suction, and I cannot doubt that this was the immediate cause of the damage.

The place where the barge was moored was not a proper place for her to remain in, either aground or while the Drew was passing, when the water was so low that the ordinary suction and swell would be likely to cause her to strike the bottom. The danger was evidently known to the libelant. His arrangement with the tug was a definite one,—that the barge should be removed from this place before the time for the large boats to pass. The tug was there for the purpose of removing this barge accordingly, and was prevented only by her being aground. This was clearly the fault and at the risk of the libelant, or those representing him in charge of the barge. The water there was shallow, and the channel in which the Drew would pass was only some 500 or 600 feet wide. It was in a place where such boats had been in the habit of mooring only temporarily, and was known to be improper to remain in while large steamers were passing. The primary fault for this injury was, therefore, on the part of those having charge of the barge.

The liability of the Drew depends upon the question whether she used all the care and diligence which were reasonably incumbent upon her to avoid doing injury. *The Daniel Drew*, 13 Blatchf. 523. The liability, however, to do damage to boats lying in shallow waters through the swell and suction of her passage is a familiar fact. In passing Castleton, where such boats ordinarily lie, the practice is to slow down in order to diminish this danger. After passing Castleton, and before reaching the place where the libelant's barge lay, it was usual to proceed at the ordinary speed of that region. In this case the pilot of the Drew, seeing the lights of the barge ahead, and that they were moving, continued his slow rate until abreast of the barge, when he resumed his former usual speed. The libelant's testimony, that the Drew approached at her usual speed, is, I think, disproved by the claimants' witnesses. I cannot doubt, however, that as the Drew approached, signals requiring special caution on her part were given from the barge by shaking a lantern repeatedly. The libelant's witnesses testify that this was done three separate times before the Drew reached her. The pilot of the Drew could not have failed to understand, from the ordinary lights of the barge which he

saw before him, and which showed the barge in a dangerous place, that care in passing her was necessary; and that he did so understand, is evident from his continuing under a slow bell longer than usual. The only question in the case is whether this was all that was incumbent upon him, considering that he knew the shallowness of the water there, and the danger to this barge through the suction and the swell which the Drew might cause in passing her. The tug, shortly before the Drew reached the place, had steamed away, though she was of lighter draught than the barge, because her pilot knew that it was dangerous for the tug to remain there. The pilot of the Drew saw her steam away, leaving the barge in her dangerous situation, and the signals by shaking the lantern on the barge were clearly visible to the Drew. The pilot of the latter was familar with the shallowness of the stream at this point, and with the liability of the Drew to do damage to boats aground or nearly so, and that it was not usual for barges to be there during the passage of large steamers. With this knowledge, and seeing the lights of the barge in this improper and dangerous situation, and seeing the tug steaming away as the Drew approached, and the barge shaking her lantern, I think the pilot of the Drew is fairly chargeable with notice that something unusual was the matter; that the barge was in a dangerous and helpless condition; and that it was necessary for the steamer to do all that was reasonably within her power to diminish the danger from the suction and the swell incident to her passage. This was the only danger that could exist under the circumstances. The Drew knew this, and knew, therefore, that it was to avert this danger that these signals and warnings were given.

The evidence shows that the steamer might, without any difficulty, and without any danger to herself, have gone a hundred yards further west than she did, and so much more distant, therefore, from the barge; and also that she increased her speed as soon as she got abreast of the barge, instead of waiting until the diverging line of her swell had passed the barge. Since these additional precautions were perfectly within the power of the Drew, and since the danger of the barge, and the necessity of caution, were sufficiently made manifest by all the circumstances of the case, I must hold the Drew chargeable with fault. Being sufficiently notified of the particular danger to the barge from her swell and suction, the Drew cannot be absolved simply because she employed one means, viz., slowing, for averting the danger. She was bound to use, not merely one means, but all reasonable means in her power that might be in fact necessary to avoid the particular danger made known to her. Knowing the extent of her swell, she was bound to go far enough off to prevent injury from it, when there was plenty of room for her to do so without danger to herself; and to postpone any increase of that swell through an increase of her speed until she had passed the barge so far that her retreating and diverging swell could no longer affect the barge.

Had these additional precautions been taken, I think no injury to the barge would have happened.

In the case of *The Daniel Drew*, above cited, (13 Blatchf. 523,) where the respective rights and obligations of such steamers under somewhat analogous circumstances are carefully considered, the court, in absolving the steamer, makes special mention of the fact that "the Drew passed as near the eastern shore as it was safe for her to go;" and also that the tow in that case had given no signals to the steamer; and at page 528 it is clearly indicated that it is only when the passing vessel "has no reason to apprehend that she will do an injury," that she is to be held not responsible for such injuries as arise in her ordinary navigation. The circumstances of the present case are essentially the opposite in the particulars there emphasized. The master of the Drew here did have knowledge, not only that the barge was in a dangerous position, but of the particular danger to be apprehended. He received signals of danger and could not have misinterpreted them; and in the two particulars I have mentioned he did not use the means easily within his power to avoid doing injury. Such neglect has, I think, been always held, and for the protection of life and property ought always to be held, a fault sufficient to charge the vessel with responsibility for the loss. *The Morrisania*, 13 Blatchf. 512; *The C. H. Northam*, 7 Ben. 249; *The Syracuse*, 9 Wall. 672.

Both, therefore, being found in fault, the libelant is entitled to one-half his damages, with costs.