The El Dorado.[1]

Cahill v. The El Dorado.

(*District Court, S. D. New York.* May 27, 1886.)

COLLISION — CANAL-BOAT AND STEAMER'S PROPELLER — SUCTION — EVIDENCE— PROPELLER AT REST—LIABILITY.

> While the libelant's canal-boat H. was being warped by her captain into a. slip on the North river, her bow came in contact with the propeller of the steam-ship El Dorado, which was lying at the pier. For the resulting damage the El Dorado was libeled. *Held,* on the evidence, that the steamer's propeller was not in motion at the time of collision, and the steam-ship consequently was not liable.

In Admiralty.

*E. D. McCarthy,* for libelant.

*Charles H. Tweed* and *R. D. Benedict,* for claimants.

Brown, J. On the twenty-sixth of September, 1885, just prior to the departure of the steam-ship El Dorado from the slip between piers 36 and 37, North river, the libelant's canal-boat Humphreys was injured by her bow's coming in contact with the blade of the steamer's propeller. The canal-boat had been brought into the slip a short time before by a tug, and cast off near the side of the steamer. The slip was nearly full of boats. The captain of the canal-boat, after she was cast off, pulled up along-side the steamer to another canal-boat further up the slip, and outside of a barge that was next to the wharf. While pulling on this line, the bow of his boat came in contact with the propeller. The libelant's witnesses testify that the propeller was in motion; that they saw the commotion of the water made by it; and the libelant's theory is that it was the suction caused by the propeller's motion that drew the bow of the canal-boat against the propeller blade. The testimony on the part of the steamer leaves little doubt that this took place somewhere from 4:15 to 4:30 P. M. Her testimony is also to the effect that the steamer's machinery and her propeller were worked, as usual, from an hour to an hour and a half, up to 2:30 o'clock; that at that time the engine was stopped, the machinery made fast and not moved, nor the propeller blade turned from that time until after the accident, and after the canal-boat had sunk; nor until the steamer had been warped out some 50 feet clear of the canal-boat. The accident is attributed to the forward motion of the boat as she was pulled along, combined with the set of the tide in the slip southward beneath the wharf.

I am satisfied that injuries like the present might be produced by either of the causes mentioned. According to the almanac, it was high water on that day at 9:35 A. M. It would be low water at about

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

3 : 45. In this case, however, it was proved that for upwards of an hour after the water is rising on the flood-tide there is a downward surface current along the docks, and a similar current within the slips, which has more or less free play through the pile-work upon which this wharf was built. Similar evidence has been given before me in other cases, and there is no doubt of its correctness.

The boat was loaded with 275 tons of coal. The canal-boat being of much less draught than the steamer, the effect of such a southward current in the slip, along the after-part of the steamer, would be to draw along the steamer's side until it reached the stern, and there sweep round her stern to pass under the wharf. The position of the canal-boat's stern, angling out into the slip at the time her bow struck the propeller blade, agrees with this theory.

The evidence further establishes, to my entire satisfaction, that the marks of the blow seen upon the canal-boat could not have been made by the propeller blade when in motion. There was no cut answering to any possible motion of any part of the propeller blade, such as existed in the case of *The City of Puebla*, Mar. Reg. April 14, 1886. The print of these marks, taken directly from the boat, and used as an exhibit, together with the place of the blow on the side of the boat only, prove it to be impossible that the blow could have been received in any other way than from the side edge of one of the propeller blades while at rest. The libelant's case is therefore reduced to one of two alternatives: Either that the boat was drawn to the propeller blade through the propeller's previous motion, and that the propeller's motion was stopped within an interval of a quarter of a revolution, just as the bow was going in between the two adjoining blades; or else that, while the propeller was still in motion, the bow went in between the two propeller blades, and stopped the propeller's motion without receiving any deeper injury than the blow shows.

Considering the force of the propeller blade, and its sharp edge, and that there was planking of only two and one-half inches thickness to resist it, and that the boat was loaded with 275 tons of coal, with the momentum of that weight, the second alternative does not seem to me credible. The force of the propeller wheel worked by the engine of so large a steamer would not in any probability have been overcome by such an obstacle without showing any more perpendicular breadth in the mark of the injury, nor without breaking through the boat's ceiling.

The first alternative is also so improbable that it could not be admitted except upon a clear and strong preponderance of proof. There is certainly no such preponderance in this case. The evidence that the steamer's engine was not moved at all from 2 : 30 until after she was warped out is substantiated by a number of witnesses, and by all the proof that it was possible for the steamer to give. This testimony is entitled to at least equal credit with the libelant's testi-

mony. There is no improbability in the steamer's narrative; and the testimony of her witnesses is not weakened by such a number of minor doubts or inconsistencies as attach to the testimony of the witnesses for the libelant. As the propeller was in motion both before and after the collision, the recollection of the witnesses as to the *time* of seeing the water in commotion might be easily mistaken. Not considering, and possibly not knowing, of the set of the current beneath the wharf, it was natural to ascribe the swinging of the bows around the stern to the supposed suction of the propeller; and the eddies which would naturally form from such a current around the stern and the rudder of a deep vessel might also be mistaken, in the absence of special attention, for a disturbance of the water supposed to be made by the propeller.

On the whole, there is clearly no such preponderance of proof on the part of the libelant as establishes fault in the claimant's vessel, and I am constrained, therefore, to dismiss the libel.