## BELL v. NEW JERSEY STEAMBOAT CO.

(Supreme Court, Appellate Division, Second Department. November 23, 1900.)

NAVIGATION—COLLISION.

In an action charging that defendants negligently navigated their steamboat in passing plaintiff's canal boat, forcing it against the docks by the suction and swells of the steamboat, it was error for the court to charge that in navigating rivers where small boats are expected, steamboats are bound to navigate with caution, and at a rate of speed sufficiently slow to avoid danger from her attending swells; it being sufficient to charge that such steamboat, in passing the docks, should proceed at such rate that no danger would be likely to result, provided she had timely notice of the presence of vessels at the docks.

Appeal from trial term, Greene county.

Action by Annie Bell against the New Jersey Steamboat Company. From a judgment in plaintiff's favor, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

W. P. Prentice, for appellant.

F. H. Osborn, for respondent.

GOODRICH, P. J. The plaintiff's canal boat Dema and Willie, laden with 255 tons of molding sand, sank during the evening of May 3, 1898, while moored at a dock in Coxsackie, on the Hudson river. The plaintiff alleges that the defendant's servants who were in charge of the steamboat Adirondack "negligently, carelessly, and unskillfully" navigated the steamboat "in approaching and passing too close" to the canal boat, "at too great speed," so that the canal boat was "forced and driven against said dock with great violence by the suction and swells of said steamboat," and crushed so that she sank. The evidence was very conflicting, and necessitated a submission of the issues to the jury. There was sufficient evidence to justify the verdict which they rendered for the plaintiff, and we should not disturb such verdict except for what appears to be clear error in the charge of the court. The court had correctly charged that the question as to the defendant's negligence was:

"Was the defendant's boat proceeding in an ordinarily safe way, for that is the law? It is not liable for any injury which it may cause, but the law is that one is liable in the management of his property for the injury to the property of another when he is not conducting his own business in an ordinarily safe and prudent manner. That is the law of negligence. It arises out of the principle that every man must so use his own property as not to injure the property of another. Was the defendant's boat on this occasion proceeding, when it came in sight of and passed by the plaintiff's boat, in an ordinary and safe manner? If it was using proper care for the protection of the plaintiff's boat moored there at her dock, then, whatever injury may have occurred to the plaintiff's boat, it is one for which the defendant is not responsible."

Not content with this plain statement of the law, the plaintiff's counsel made further requests to charge, and the court charged, as follows:

"Mr. Osborn: I ask you to charge that it is the duty of steam vessels passing near docks or other mooring places to pass at such a rate of speed that no danger will be likely to result from her swells, provided she has timely notice of the presence of other vessels at such docks as are likely to be damaged from the suction and swells of such boats. The Court: I so charge. Mr. Osborn: Also that in navigating rivers where small boats are accustomed to ply and may be reasonably expected, steamboats are bound to navigate with caution, and at a rate of speed sufficiently slow to avoid danger from her attending swells. The Court: I so charge. (Defendant excepted.)"

The first of these requests was all that the plaintiff was entitled to, and was a renewed statement of the law already laid down by the court. The second request charged, however, was clearly erroneous. It vitiated the former charge, and in effect took from the jury all right of deciding the question already submitted by the court, viz. whether or not the defendants were negligent in the management and navigation of the steamboat, and instructed the jury that the defendant's steamboat, under all circumstances, was bound, as matter of law, to proceed at such a rate of speed as to avoid all danger to other vessels from her swells. With this instruction sounding in their ears as the last delivery of the court, it would have been singular if the jury had come to any other conclusion than that the defendant's steamboat was negligent in proceeding at the rate of speed at which she was actually going. There is no hard and fast rule as to the rate of speed at which a steamboat must navigate the Hudson river at the place in question, though there is a provision of one of our state statutes forbidding steamboats to pass the docks and wharves in Albany at a rate of speed greater than six miles the hour. 3 Rev. St. (9th Ed.) p. 2070. The absence of any statutory regulation of speed at the place in question is significant. The regulations for preventing collisions in certain rivers of the United States (30 Stat. 96), including the Hudson river at the place in question, contain no provision as to speed of vessels. There is a provison that in narrow channels a steam vessel shall, when it is safe and practicable, keep to that side of the fair way or mid-channel which lies on the starboard of the vessel; but as to speed the regulations are silent, leaving the general rule of navigation to be applied to all cases. This rule is well stated by Judge Hunt in the case of The Daniel Drew, at the United States circuit court (13 Blatchf. 523, Fed. Cas. No. 3,565), where he said (pages 527, 528, 13 Blatchf., pages 1166, 1167, Fed. Cas. No. 3,565):

"There is no law which limits the space a boat may occupy, or which prescribes how fast it may go, or how much swell it may cause, or how near it may pass to another boat. The rule of permission or of restriction depends in each case upon the reasonableness of the thing done. A dull sailing tow may not occupy unreasonably the entire channel of the river, and thus impede its navigation by all other vessels. A leviathan may not rush through the water with a speed that will overwhelm in its surges all the craft ordinarily to be found upon the river. Nor is a large vessel, under all circumstances, absolutely liable for an injury caused by its swells to an inferior vessel. The waters are open to the use of all kinds of crafts, large as well as small;

and, while the rights of the smaller are to be carefully guarded, they are not to be made a pretense for excluding, or preventing the practical use of, larger or different vessels.  *  *  *  If an overtaking and passing vessel, in prudent navigation, creates swell and suction, arrangements must be made that the boats in a tow shall not be injured thereby. If the swell and suction created by the passing vessel are those to be expected in the ordinary navigation of a rapid vessel, which is managed with prudence and equipped and constructed in a suitable manner, and if the passing vessel has no reason to apprehend that she will do an injury, and a tow is injured thereby, the passing vessel is not responsible. She has but exercised her lawful rights, and the loss must be borne by the injured party."

After reviewing authorities which had been cited, Judge Hunt closed the opinion in these words:

"I see nothing in these cases in hostility to the principles hereinbefore announced. They do not countenance the idea that the superior vessel is necessarily and absolutely liable to the inferior in the event of an injury from the swell of the former. They place the decision, in every instance, upon the question of negligence or improper management in the larger vessel. The principles of this opinion are in entire harmony with those laid down in The Alleghany, 9 Wall. 522, 19 L. Ed. 781, and in The Syracuse, 9 Wall. 672, 19 L. Ed. 783. The cases of The Leo, 3 Ben. 569, Fed. Cas. No. 8,250, and The C. H. Northam, 7 Ben. 249, Fed. Cas. No. 2,689, I have carefully considered."

It was, therefore, error for the court to charge the latter request above cited, and for this reason the judgment should be reversed.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur.