## THE ROTHERFIELD.

(District Court, S. D. Alabama.    June 10, 1903.)

### No. 1,010.

1. SHIPPING—NEGLIGENT NAVIGATION—DAMAGE CAUSED BY SWELL.

The burden rests upon a vessel under way, in order to exonerate herself from liability for an injury to one which was stationary, to show that it was not in her power to prevent the injury by adopting any practicable precautions, and in shallow waters she is bound to know and guard against the effect of the swell and suction caused by her movement.

2. SAME—BREAKING MOORED RAFT.

A log raft was lying next to the bank of a river, outside of the channel, and in a proper place, being most of its length inside of a boom, when it was broken up, and some of the logs were lost, by reason of the swell caused by the propeller of a large steamship, which in leaving her berth just above the raft and starting down stream struck an obstruction, and put on full steam in an endeavor to pass over it, the stern swinging around in close proximity to the raft. Not being successful in passing the obstruction she backed off, and passed around it at a safe distance from the raft. *Held*, that there was nothing to show that the steamer could not have avoided the injury to the raft by the exercise of reasonable care, and that she was liable for the loss.

In Admiralty.    Suit for damage to raft of logs.

McAleer & Ervin, for libelant.

Pillans, Hanaw & Pillans, for claimant.

TOULMIN, District Judge. As shown by the evidence in this case, the undisputed facts are that on December 29, 1902, the libelant had a raft of pine logs tied to the west bank of Mobile river a short distance above the city of Mobile. The raft, which was not an unusually large one, was about two-thirds inside of libelant's boom and one-third projecting along and near the bank above and beyond the end of the boom. The boom was made of piling driven in the bottom of the river between its said west bank and the channel. The raft was tied to the bank at both ends. It was what is known to the mill and timber men of Mobile as a "V" raft. It was not what is known as a "sack" raft. The raft was well out from the west bank of the channel of the river and of the track of vessels navigating the river. While the raft was thus moored, the steamship Rotherfield, a large vessel, which had been moored and loaded with a cargo a short distance above the location of the raft—a usual place for loading such ships—started down the west side of the channel of the river on her voyage to sea. She was under steam, and in tow of a tug, and also escorted by another tug. She was moving at slow speed, with a local bar pilot navigating her. When nearly abreast of libelant's boom, she ran on an obstruction in the channel, supposed to have been a log, which stopped her headway. She at once put on her full steam power, and attempted to go ahead at full speed over the obstruction. Her stern swung somewhat on to the west bank of the channel and above the end of libelant's boom and within 12 or 15 feet of the raft. The great swell and current created by the action of her propeller directly against the raft so broke it up as to

wash out into the stream 30 logs which were a part of the raft, and which were carried off by the current or tide, and totally lost to libelant. The steamer, failing in her attempt to run over the obstruction with a full head of steam, backed off from the obstruction with the aid of the escorting tug, and then proceeded down the channel to the eastward of the obstruction without further hindrance.

It appeared from the testimony of the pilot on the steamer that two or three other vessels had encountered the same obstruction. He testified that he ordered on the full head of steam to put the steamer at full speed because his judgment was she could run over the obstruction, and that it would also tend to keep her stern from swinging on the west bank, and he considered it the quickest way to get out, which was a very important consideration in view of the then stage of the water. He further testified that when he found he could not go over the obstruction he backed off from it and went around it. He also testified that he did not see the raft, and did not know at that time that the raft was there. There was no evidence that any one on the steamer saw the raft, or knew of its proximity, although it was in evidence that there was a man on the raft, who called to the steamer, and warned it of the peril the raft was in. The evidence was that the logs which were lost were worth the amount sued for, to wit, $90.

Where a vessel properly moored at a dock, at anchor, or not in motion, is damaged by a vessel in motion, the presumption of law is that it was the fault of the one under way; and it is presumptively liable until the contrary is shown, the burden of doing which is upon the vessel under way. The Morrisania, 13 Blatchf. 512, Fed. Cas. No. 9,838; The Tiger Lilly (D. C.) 11 Fed. 745; The Worthington (D. C.) 19 Fed. 836; The Drew (D. C.) 22 Fed. 852; The Rhode Island (D. C.) 24 Fed. 295; The El Dorado (D. C.) 27 Fed. 762; The Ogemaw (D. C.) 32 Fed. 919; The New York (D. C.) 34 Fed. 757. The vessel in motion must exonerate herself from blame by showing that it was not in her power to prevent the injury by adopting any practicable precautions. The Virginia Ehrman, 97 U. S. 309, 24 L. Ed. 890; The Bridgeport, 14 Wall. 119, 20 L. Ed. 787. It is the duty of steamers passing docks or other mooring places to pass at such a rate of speed that no danger will result from her swell, or to pass at such a distance that no harm will result to a vessel, lawfully there and properly moored, from the suction produced by her passage through the water or from her displacement wave; and she is bound to know the effect of her swell. Spencer on Marine Collisions, § 72. "A steamboat passing in the vicinity of other craft in shallow water is bound to use all reasonable precautions to avoid doing them injury from the known suction she causes." The Drew (D. C.) 22 Fed. 852. In that case Judge Brown says: "The liability to do damage to boats lying in shallow waters through the swell and suction of her passage is a familiar fact." "The undoubted right of the steamer to the navigation of the river is subject to the restriction that it must be exercised in a reasonable and careful manner, and do no injury to others that care and prudence may avoid." The Morrisania, supra. Upon the evidence I cannot find that the injury

to the raft was attributable to any neglect on its part or of its owner. It was in a lawful and proper place, and no reasonable caution in respect to its construction or mooring had been omitted. It cannot be disputed that the immediate cause of the injury was the swell and suction created by the steamer as she attempted at full speed to go ahead over the obstruction so near the bank and the raft. Whether or not she saw the raft, or knew it was there, makes no difference. She ought to have known it. The raft (a greater part, at least) was in a stationary boom. It was moored at a place where it was usual for rafts to be. The pilot who was navigating the steamer was familiar with the channel, and doubtless also familiar with the location of the booms and mooring places along the bank of the river, even if the steamer had no lookout on the particular occasion—as to which there is no evidence. Between a raft fast at the bank of the river out of the track of other vessels and moored in a proper place and a steamer navigating a channel of sufficient width for her to move or stop at pleasure the fault, under almost any circumstances, where there is no unusual action of the elements (and there was none in this instance), will be held to be with the steamer. It is hardly necessary for us to stop to inquire wherein the steamer was not managed with proper nautical skill or good judgment— whether she should not have backed when she encountered the obstruction, instead of attempting on a full head of steam, and at full speed to run over it; whether she should have ported or starboarded her helm; whether she should have gone farther to the eastward of the channel, so as to have passed by the obstruction without trouble, as she eventually did; whether the pilot of the steamer knew at the time that the obstruction was there, the same having interfered with other vessels going down the channel (whether this was before or after the act complained of did not clearly appear from the evidence). However, as said by the Supreme Court in the case of the Granite State, 3 Wall. 310, 18 L. Ed. 179, "All these inquiries are superfluous," from which case the foregoing suggestions are principally derived. My opinion is that the steamer has failed to show that it was not in its power to prevent the injury complained of by adopting such reasonable care and prudence as were practicable under the circumstances of the case.

Let a decree be entered for libelant for the sum of $90.