AMERICAN S. S. CO. v. AMERICAN STEEL BARGE CO. et al.

(Circuit Court of Appeals, Sixth Circuit. April 2, 1904.)

No. 1,251.

1. COLLISION—CONTRIBUTORY FAULT—BURDEN AND MEASURE OF PROOF.
   Where the fault of one vessel is palpable and adequate to account for a collision, she cannot impugn the management of another vessel, except on clear proof of contributory fault.

2. SAME—STEAMER PASSING BETWEEN MEETING TOWS.
   The Crescent City, a large lake steamer, laden with iron ore, when coming down the St. Clair river, at night, overtook and attempted to pass the steamer Trevor, with two barges in tow tandem, each on a line 750 feet long, just as they were passing round the Southeast Bend. At the same time the Maricopa, with the large barge Manila in tow, both in water ballast, was passing up. The meeting vessels were within sight of each other's lights when the Crescent City started to pass the overtaken tow, and soon thereafter passing signals were exchanged, and in pursuance thereof the descending steamer and tow kept toward the western side of the channel, while the Maricopa and tow were as close as possible to the eastern bank. As the Maricopa was rounding the bend she was passed by the Crescent City, which then took a straight course, making toward the Canadian or eastern shore, and kept it without checking her speed of about 12 miles by the land until she collided with the Manila, then sheered off, and struck the towline behind the Trevor, throwing her across the channel, where she was struck by the first tow before she could get out of the way. There was a distance of about 200 feet between the ascending and descending tows. The Trevor was going at a speed of 9½ miles by the land, and the Maricopa of 8 miles. There was a wind from the southeast, which tended to drift the Manila toward the center of the channel. *Held*, that the Crescent City was clearly in fault, both because of her excessive speed while trying to pass between the two tows at such a place, and for the course she took after passing the Maricopa, directed toward the course of the Manila; that neither of the other vessels was in fault, the speed of the Maricopa apparently being necessary to prevent the Manila from drifting, and it appearing that the latter was following her steamer, and did all that was possible to avoid the collision.

Cross-Appeals from the District Court of the United States for the Eastern District of Michigan.

Goulder, Holding & Masten, for appellant.

Hermon A. Kelley (Hoyt, Dustin & Kelley, of counsel), for appellee American Steel Barge Co.

129 F.—5

John C. Shaw (Charles B. Warren, William B. Cady, and Herbert K. Oakes, of counsel), for appellee Minnesota S. S. Co.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. The series of collisions out of which this case arose took place on the St. Clair river between 8 and 9 o'clock the night of August 9, 1899. The night was dark, but clear. A wind was blowing across the channel from about S. S. E., probably strong enough to drift a slow-going tow. Six vessels were involved. The whaleback steamer John B. Trevor, with the barges 131 and 118 in tow, all loaded with ore, was bound down, followed by the steamer Crescent City, also loaded with ore, while the steamer Maricopa, with the barge Manila in tow, both in water ballast, was bound up. The Trevor was 308 feet long, the "131" was 292 feet, and the "118" was 285 feet. The tow lines were each about 750 feet long. The Trevor and her barges each drew about 18 feet, and were making about 7½ miles an hour through the water. The Crescent City was 426 feet long, drew about 18 feet, and was making about 10 miles through the water, or 12 miles by the land. The Maricopa was about 428 feet long, and the Manila about 450 feet long; the towline between being about 800 feet long. The Maricopa drew about 15 feet aft and 1 or 2 feet forward, the Manila drew about 7 feet aft and 6 feet forward, and their speed was about 10 miles an hour through the water, or about 8 by the land. The scene of the collisions was what is known as the "Southeast Bend," beginning about 2¼ miles above the upper end of the St. Clair Flats Ship Canal. The river here winds through the low marshland known as the "St. Clair Flats." There is nothing on the Canadian side to obstruct the view. So a vessel entering the upper end of the bend commands the entire bend and river to the ship canal. The navigable channel varies in width, being about 900 feet at the points of collision, but less above, and is very crooked; a descending vessel turning from a course about northwest to a course almost southwest, while an ascending vessel swings from a course about northeast to a course nearly southeast. When the Crescent City reached the bend, coming down, she was fast overtaking the Trevor and her tow. The Maricopa and Manila were then approaching or entering the bend, coming up, and their lights were in plain view over the flats on the Canadian side. The Crescent City gave a two-blast signal, which was answered, and proceeded, without checking her speed, to pass the Trevor tow to port. While the Crescent City was thus overtaking and passing the Trevor tow in the bend, the Trevor, and later the Crescent City, exchanged one-blast signals with the Maricopa, thus agreeing to pass port to port, which required the Crescent City to direct her course between the Trevor tow and the Maricopa tow. The Crescent City met and passed the Maricopa safely. The distance between the Maricopa and the Trevor tow at that time was at least 200 feet, and between the Crescent City and the Maricopa between 50 and 75 feet. The Maricopa was on a curved course, gradually swinging, under a port wheel, around the bend. The Manila was following her. About this time the Crescent City adopted a southwesterly course, bear-

ing towards the Canadian shore, which is described by her captain. This course was straight, and she kept it without checking her speed until she collided with the Manila; the port bow of the Crescent City coming in contact with the port quarter of the Manila. The distance between the Manila and the Trevor at this time was about 200 feet. From this collision the Crescent City sheered sharply to starboard, and brought up in the bight of the towline between the Trevor and the "131," barely missing the stern of the Trevor. The Trevor was thrown broadside the channel, heading for the Canadian shore. She backed, and, as the towline dropped below the stem of the Crescent City, cut it. The Crescent City then went ahead and under a starboard helm, straightened up, and passed on down. The Trevor immediately started her engines, but, before she could get out of the way, the "131," coming down at a speed of about 6 miles, struck her on the port side aft, staving a large hole, and making it necessary to beach her on the Canadian bank. The court below condemned the Crescent City, the Maricopa, and the Manila—the first two because of their speed, and the last because of her position; taking the view that the stern of the Manila was wrongfully in the course of the Crescent City, but that, if the Crescent City and the Maricopa had checked down after signaling to pass, there would have been time, after discovering the danger ahead, to avoid the collision. The Trevor and her barges were held blameless. From the decree based on this finding, the parties have appealed.

1. The negligence of the Crescent City was palpable and persistent. It began with her speed, was aggravated by her course, and rendered inexcusable by her persistence in both, despite a threatened collision. When she reached the upper end of the bend, she had a clear view of the canal. She could see not only the Trevor tow in the bend ahead, going down, but the Maricopa tow below it, coming up. She should have considered the danger of trying to pass these tows in that crooked channel without checking her speed. But she wanted to pass the Trevor tow before it should reach the canal, so as not to be delayed there, and for this reason kept her speed, and hurried headlong between the descending and ascending tows. As was said in The Syracuse, 9 Wall. 672, 676, 19 L. Ed. 783: "She had no right thus to hurl herself like a projectile into the midst of the vessels before her, taking the hazard of the consequences." So much the learned judge below found, and we concur in this conclusion.

2. But the fault did not end with the speed, for the Crescent City, before she was out of the bend or had passed the Maricopa, adopted a straight course, which converged toward the Canadian side, up which the Maricopa and Manila were then working on a curved course. The Crescent City had not yet passed the "131." The straight course taken constituted a short cut across what remained of the bend, inevitably carrying the Crescent City close to the course of the Maricopa tow. Such a course, under the circumstances, was inexcusable, yet it is clear it was taken. The captain of the Crescent City says that when they met the Maricopa his boat was going steady on a straight course. "There is a little curve there, but we were going straight then." This course was not changed until he struck the Manila. He

marked this course upon the map, and the point of collision was where the line approached the Canadian side. The second mate stated they were working toward the Canadian shore while passing the Maricopa. The captain of the "131" said the Crescent City was heading a point or a point and a half further toward the Canadian bank than he was. The captain of the Maricopa testified that, when the Crescent City passed him, she appeared to be heading not quite a point on to the Canadian side. The second mate stated that, when the Crescent City passed the Maricopa, she was drawing in all the time on their course. All this makes it plain that the Crescent City took a course which carried her over toward the Canadian shore. At this time there was a space, variously estimated at between 200 and 300 feet, left for her between the descending and ascending tows. All the vessels were in the bend. The Trevor and her tow were on the American side of the range, near the middle of the channel. The Maricopa, with the Manila 800 feet behind, was gradually swinging around the bend, hugging the Canadian bank. She was without cargo, and so was her tow. The Manila was a very large barge—450 feet long—and was drawing only 6 feet forward and 7 feet aft. She exposed a broad surface to the wind, and the wind was blowing across the channel from the Canadian side. Under these circumstances, in order to prevent the Manila drifting to leeward, it may have been advisable not only to tow her at a good speed, but to some extent to hold her in to the wind. Such being the situation, it was the plain duty of the Crescent City to divide the space between the two tows and follow a winding course, keeping her distance from the ascending tow until she had cleared it. Instead of doing this, in reckless disregard of the existing conditions, the Crescent City laid her course a point or a point and a half more toward the Canadian side than the course of either the descending or ascending tows, and, with strange persistence, held it until she struck the Manila.

3. The captain of the Crescent City admitted that when abreast the stern of the Maricopa he discerned the Manila, and realized she was across his course. At that time a distance of some 1,200 feet separated the Crescent City and the aft quarter of the Manila. The captain was asked whether he tried to change his course or check his speed, and answered that he did not. He was asked, "Why not?" and gave three different excuses: First, that he did not have time; second, that he did not think it was necessary; and, third, that he did not have room. None of these excuses are satisfactory. In our opinion, there was time and opportunity both to check and to port. If this had been done, we cannot but believe the Crescent City would have cleared the Manila. Twenty feet to starboard would have taken her by. There was ample space between the Manila and the Trevor to have made this maneuver. The captain stated there was at least 200 feet. Why nothing was done, we can hardly conjecture.

4. We come now to consider the conduct of the Manila and the Maricopa. The lower court condemned both—the former on account of her position, the latter on account of her speed. For the reasons we have given, the fault of the Crescent City is palpable. Both her speed and her course were reckless and inexcusable. The doctrine of

The City of New York, 147 U. S. 72, 85, 13 Sup. Ct. 211, 37 L. Ed. 84, followed by this court in The Australia, 120 Fed. 220, 224, 56 C. C. A. 568, is therefore applicable. The fault of the Crescent City being adequate to account for the collision, she may not impugn the management of either the Manila or the Maricopa without clear proof of contributing faults on their part. As was said by the Supreme Court in the case of The Victory, 168 U. S. 410, 423, 18 Sup. Ct. 149, 155, 42 L. Ed. 519, quoted by this court in the case of the steamer Philip Minch, 128 Fed. 578:

"As between these vessels, the fault of the Victor being obvious and inexcusable, the evidence to establish fault on the part of the Plymothian must be clear and convincing in order to make a case for apportionment.".

Now, the charge against the Manila (sustained by the lower court) is that she got into the path of the Crescent City by failing to follow her steamer, and that against the Maricopa is that she towed the Manila too fast to permit her to get out of the way of the Crescent City. But if the Crescent City had no right to take the course she did, then the Manila did not get into her path. It was not the path of the Crescent City, but that of the Manila, which was infringed. If the Crescent City had divided the space between the two tows, she would not have been against the Manila when the Manila was 200 feet from the Trevor. The Crescent City made no complaint of the course of the Maricopa, and the proof fails to show that the Manila was not following the Maricopa as closely as prudent navigation permitted. In rounding the bend with the wind off the Canadian shore, she may have tailed some—it may have been advisable to hold her up some. But this should have been foreseen and allowed for by the Crescent City. The apparent swing of the Manila's stern into the stream was doubtless the result partly of her proper navigation in rounding the bend with a wind abeam, and partly of the wrongful course of the Crescent City. If the Crescent City had been pursuing a course midway between the two tows, and parallel with theirs, the stern of the Manila would not have seemed to swing out into the stream. It is conceded that, when the Crescent City was discovered bearing down upon the Manila, every precaution was taken on the latter. Her helm was gradually ported until hard aport, and, when the Crescent City reached her bow, was put hard astarboard. As to the speed of the Maricopa: This steamer was proceeding at about 10 miles an hour through the water, or 8 by the land. The signal of the Crescent City compelled her to take the Canadian side, from which the wind was blowing. It was necessary not only to keep close to that side, but to keep her tow there; that is, to keep going at a speed which would prevent the tow from drifting. Her master testified that he considered it imprudent to check down, for fear the Manila would sag to leeward. Under the rule, the proof must satisfy us that the master of the Maricopa was clearly wrong in not checking down. It does not. Both as to the Manila and the Maricopa, the evidence fails to meet the rule which we have quoted. In neither case is it so clear and convincing as to establish the fault charged. We are not satisfied that the Manila was where she had no right to be, nor are we convinced that the Maricopa was towing the Manila at too great a speed.

5. The second collision—that between the Trevor and the "131"—can be disposed of in a few words. The Crescent City, being at fault in the collision with the Manila, must be held responsible for the collision with the towline between the Trevor and the "131." The sole question is whether the Trevor or the "131" neglected to do anything that could have been done to avert or avoid the collision which took place when the Crescent City got out from between them and passed on down. We are not satisfied that anything effective could have been done. The vessels were then in extremis. There was no time for either the Trevor to acquire headway, or the "131" to respond to a port helm. They were so close together and the time so limited that the accident was inevitable.

The decree of the court below is reversed, and the case remanded, with directions to assess the damages and costs against the Crescent City.