## WINEMAN v. DRAKE et al.

(Circuit Court of Appeals, Seventh Circuit. April 16, 1907. Rehearing Denied May 17, 1907.)

### No. 1,301.

1. COLLISION—STEAM VESSELS MEETING—MUTUAL FAULT.

The steamer City of Berlin, with a barge in tow on a line, both ore laden, bound down the Detroit river at night, as she made the turn of two points from the course leading from the Lake St. Clair channel into the Windmill Point ranges, met and passed the Venus bound up, with the barge Tyrone in tow. Behind the Tyrone and overtaking her was the steamer Chili. Signals for passing port to port were exchanged between the Berlin and both the Venus and Chili, but when the bow of the Berlin, which had made the turn and straightened on her course, was about opposite the port quarter of the Tyrone and about 150 feet away, she came into collision with the Chili, which struck her port bow, inflicting injuries from which she afterwards sank. Under rule 24 of the rules for navigation of the Great Lakes, Act Feb. 8, 1895, c. 64, § 1. 28 Stat. 645 [U. S. Comp. St. 1901, p. 2891], the Berlin had the right of

way. *Held*, on the evidence, that the Chili came out from behind the Tyrone, heading toward the course of the Berlin as the latter was approaching, and was in fault for the collision; that the Berlin was also in fault under the circumstances for not allowing more room for passing, having 500 feet of open water on her starboard side.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Collision, § 40.]

Appeal from the District Court of the United States for the Eastern District of Wisconsin.

Fred C. Harvey and Chas. E. Kremer, for appellant.
Frank S. Masten and Harvey D. Goulder, for appellees.

Before GROSSCUP, BAKER, and KOHLSAAT, Circuit Judges.

KOHLSAAT, Circuit Judge. On August 7, 1904, at 9 o'clock p. m., the steamer City of Berlin (hereinafter termed the Berlin) and the steamer Chili came into collision in the Detroit river, just below the turn from the Windmill Point ranges to the course leading to the 800-foot channel in Lake St. Clair. The night was dark but clear, with a light wind. The Berlin, a wooden steamer 298 feet in length and 40 foot beam, bound down the river with 3,000 tons of ore, and towing with a 650-foot line the barge Aurora, also ore laden, while yet above the turn, sighted the steamer Venus coming up the river with her tow, the barge Tyrone, approximately 600 feet behind her. To the stern of the Tyrone, and overhauling her at the rate of 1½ miles an hour, came the steel steamer Chili, 320 feet long and 42 foot beam, also bound up the river, with about 4,000 tons of coal.

At a distance of a mile apart the Berlin and Venus exchanged signals indicating a mutual intention of passing port to port. Shortly afterwards the Berlin and Chili exchanged like signals. The Berlin and Venus approached and passed the turn together. There is some dispute on the record as to the distance apart these vessels were at the time; but we deem it sufficiently proven that the distance was about 200 feet. As the Berlin made the turn into the Windmill Point ranges —being a turn of two points—and when her amidships was about abreast the stern of the Venus, she for the first time discovered the Chili close to the port quarter of the Tyrone, and, as her crew claims, coming out from behind the Tyrone into the course of the Berlin, which it is claimed had straightened out practically 200 feet from and parallel with the course of the Tyrone, heading a little to the westward of and away from the ranges. The Berlin thereupon blew an alarm whistle and proceeded to check her headway, port hard her helm and back. Just what action was taken on board the Chili is in dispute. The two were, however, so well under headway that a collision took place, the Chili's port anchor coming into contact with the Berlin's port bow about 20 feet back of her stem, at an angle of 2 points or about 22 degrees, and remaining in the hole made thereby. The Chili then struck the port side of the Berlin a second time with her stem about 19 feet back of the first place of impact, and tore out an opening 22 feet in length by 8 feet in width. The wale streak of the Chili also raked the Berlin's side past her amidships, doing considerable damage. The place of collision was about abreast of the port quarter of the

Tyrone. The Berlin proceeded downstream a short distance, and was beached on Belle Isle in a sinking condition. The injury to the Chili was slight, so that she was able to continue her voyage to Milwaukee, where, on August 16, 1904—nine days after the collision—her owners filed their petition in said District Court to limit their liability, and took the steps to that end by the statute provided. On February 10, 1905, appellant filed his claim in said cause for damages growing out of said collision. To this, petitioners made answer. The cause then proceeded to trial, and a decree was entered for the petitioner against appellant, from which decree this appeal is prosecuted. The only errors relied upon which need be considered are: (1) That the court erred in not finding that the Chili wrongfully came out into the course of the Berlin; and (2) that the court found that the Berlin overswung into the course of the Chili; and (3) that the court erred in not finding in favor of the Berlin.

As above stated, it has been shown by a preponderance of the evidence that, while making the turn, the Berlin and Venus were approximately 200 feet apart, and that the turn was made in the usual way. The general course of the Berlin lay substantially parallel to and about 175 to 200 feet distant from that of the Venus and her tow, the Tyrone. The officers and crews of the Berlin, the Aurora, and the Venus—in all 13 witnesses—say the Berlin straightened out after the turn was made and pursued her course down the river, heading on Belle Isle Point, which would make it about parallel with and 200 feet from the course of the Tyrone. Some of them say she was bearing a little to the westward of that course. The captain of the Tyrone says she straightened out after making the turn and held her course down the river. The lookout of the Tyrone says the Berlin at no time came nearer to the Tyrone than about 150 feet. The testimony of the captain and engineer of the Tyrone and of the officers and crew of the Chili—six witnesses in all—is to the effect that the Berlin came in on the Chili's course so that the place of collision was only from 50 to 75 feet westward of the Tyrone. The fact that the Berlin was struck in her port bow is accounted for upon the theory that when she had overswung from the turn into the Chili's course she attempted to go hard to starboard and thereby recover her course, and was struck by the Chili just as she was in the act of going out to starboard. To do this, she must have made her course from the time she crossed the ranges, in the form of a prostrate letter ℭℌ. It is conceded that when the alarm whistle was blown by her the Chili was distant from her about 900 feet, and that the collision took place within 45 seconds thereafter. If the explanation be correct, she must have overswung 150 to 175 feet and then have recovered sufficiently to have headed out again at an angle of not less than 90 degrees from her overswung course in a little over half a minute. Furthermore, she must have approached so close to the Tyrone before she went about that the officers of the latter would have been justified in apprehending a collision. The evidence shows they had no such fear. From the exhibits and other evidence produced on the hearing, it appears that the Chili struck the Berlin's bow at an angle of approximately 2 points, or 22 degrees. Assuming that the collision occurred 70 feet west of the port quarter

of the Tyrone, and that the Chili was going in a course substantially parallel with or bearing in upon that of the Tyrone, as is claimed for her, and that the stern of the Berlin was 278 feet back of the first point of contact, then it follows that the stern of the Berlin would have been across and upon the Tyrone. It is apparent that, if this be correct, the collision could not have taken place within less than 150 feet from the Tyrone. In support of the contention that the Chili made out to port from behind the Tyrone, appellant's witnesses above enumerated testify that the Chili headed across the Berlin's bow after she was straightened out on the Belle Isle course. Appellees' witnesses, on the other hand, testify that the Chili was proceeding parallel to the course of the Tyrone until the alarm sounded; that then the order was given to port a little; then, when she was deemed to be headed in a little too far toward the Tyrone, the order was given to starboard a little and steady. In their petition to limit liability, however, appellees aver that when the danger was discovered the Chili hard-ported, checked, and at once reversed and backed strong. At the time the petition was filed the Berlin had not been raised, and the extent and nature of her injury was not known. This fact, together with the fact that the petition was filed within nine days after the collision, throws suspicion upon the testimony of the witnesses given long afterwards, and, for the purposes of this hearing, the averments of the petition should be assumed to be the truth. If the Chili, while proceeding at the rate of from 8 to 10 miles an hour on a course parallel to or bearing in upon the Tyrone and from 70 to 100 feet distant, and having her bow not more than 45 to 60 feet forward of the Tyrone's stern had hard-ported, checked, reversed, and backed, it would seem as though she could not have failed to come into contact with the Tyrone's port side before her headway was checked. Her wheelsman testifies that just about the time he heard the alarm he received signals to starboard a little, then port, then starboard a little again, and then steady. This must have had the effect to send her to port and away from the Tyrone. This witness also says that when he saw the Berlin she was coming out across the Chili's bow. As the record reads, the captain of the Chili is made to say he could do nothing at the time of the alarm but "sheer back." This would show that he considered the Chili too far to port. It is difficult to believe that an old lake sailor like the captain of the Berlin should allow his boat to swing almost two points beyond the Belle Isle course, so that she headed in between the Chili and the Tyrone. Under the circumstances, it would have been gross carelessness, since he had not only to clear the Tyrone, but to bring his tow clear of the Venus. Nor is it conceivable that the Chili's stem could have struck the Berlin's port bow while the former was heading in on the Tyrone. The theory that the current probably swung her stern to the westward, carrying her bow to port, does not seem to make allowance for the strain of her tow line upon her stern. The evidence does not justify the court in finding that she at any time approached nearer to the course of the Venus and Tyrone than 150 feet. There was, however, no good reason why she should not have stood further to starboard. She must have correctly located the Chili at the time she crossed and came above the Windmill Point ranges, and might

easily have given the Chili a wide berth, even though she might have reasonably supposed there was room to pass when she steadied onto Belle Isle Point. Under the circumstances, reasonable caution should have led her to go beyond the usual turning point. There were five large vessels in close proximity to each other, and while she was not bound to take into calculation any error on the part of the Chili, it was carelessness on her part to limit the sailing room of three large vessels to a width much less than that of her own length, when she herself had 500 feet of sea room to her starboard.

The Chili was a well-equipped and powerful steel steamer. She was going up the river unincumbered. She should have kept out of the way of the Berlin and her tow. The Jamestown (D. C.) 114 Fed. 593; The George Presley, 111 Fed. 555, 49 C. C. A. 438; The Lucy, 74 Fed. 572, 20 C. C. A. 660. She came up from behind the Tyrone when she knew the Berlin with her tow was going to pass the Venus and her tow, port to port. She, too, had ample sea room to starboard of the Tyrone. She thrust herself in between the two steamers and their tows, just as they were making the turn from and onto the ranges, and at practically full speed. "She had no right thus to hurl herself, like a projectile in the midst of the vessels before her, taking the hazard of the consequences." The Syracuse, 9 Wall. 672, 19 L. Ed. 783; Am. S. S. Co. v. Am. Steel Barge Co., 129 Fed. 65, 63 C. C. A. 507.

It should also be remembered that the Berlin, as the down-bound steamer, had the right of way:

"That in all narrow channels where there is a current, and in the rivers St. Mary, St. Clair, Detroit, Niagara, and St. Lawrence, when two steamers are meeting, the descending steamer shall have the right of way, and shall, before the vessels shall have arrived within the distance of one-half mile of each other, give the signal necessary to indicate which side she selects to take." Act Feb. 8, 1895, c. 64, § 1, rule 24, 28 Stat. 645 [U. S. Comp. St. 1901, p. 2891].

We can find no evidence in the record to account for the Chili's action in going so far to port. Like the Berlin, she was both well manned and equipped. We can find in the situation no clue to the theories and motives of those in charge of either ship. We can only accept the facts as we find them. Nor is it possible to accurately ascertain from the testimony of the witnesses the exact distance of the place of collision from the Tyrone's port quarter. That it was not less than 150 feet, we deem fairly established by the whole record. This distance, it will be borne in mind, is less than one-half the length of the Chili, so that her midships would still be just off the Tyrone's port quarter, assuming that she was proceeding at an angle of 45 degrees or more to the line of the ranges and had come out from behind the Tyrone. There was bad seamanship somewhere. By the light of the evidence we discover it upon the decks of both the Chili and the Berlin. Our conclusion, therefore, is that the Chili, at the time of the accident, was heading out onto the course of the Berlin, and that the latter was drawing in towards the ranges somewhat, and that each of them might in the exercise of reasonable care have gone further to starboard and have cleared the other. Ordinary care on the part of each or either of the vessels would have avoided the colli-

sion. They were both to blame, and the resulting damages should be borne by them equally.

The decree of the District Court is reversed, with directions to enter a decree in conformity herewith.