### ANDUS v. THE STEAMBOAT SARATOGA.

*(District Court, S. D. New York. March 13, 1880.)*

INJURY TO TOW-BOAT—DUTY OF STEAMBOAT IN PASSING TOW.—If a steamboat cannot safely pass on either side of a tow, traveling in the same direction, it is her duty to wait until they have reached a point where she can thus pass in safety.

SAME—SAME—TOW ON THE WRONG SIDE OF THE CHANNEL.—The mere fact that the tow was on the wrong side of the channel would not justify the steamboat in violating her plain duty to keep out of the way of the tow, when she had such tow in plain sight, and was able to do so.

In Admiralty.

*F. A. Wilcox*, for libellant.

*S. H. Valentine*, for claimant.

CHOATE, J. This is a libel by the owner of the canal-boat Belle Andus for injuries sustained while on a voyage from Troy to New York, in tow of the tug James McMahon, on the twenty-first day of September, 1877. There were 11 boats in the tow, in four tiers, each tier having three boats, except the last, which had two. Libellant's boat was the starboard boat in the third tier, and directly astern of her was one of the boats in the last tier. The tow was proceeding down the river at a rate of about three miles an hour, and when she had reached the upper end of the long dike, about half a mile

below the lower bridge at Albany, the steamboat Saratoga, a large passenger boat, about 300 feet long and 66 feet wide, bound from Troy to New York, was following nearly astern of the tow, being just below the bridge, but having the tow a little on her port bow. The speed of the Saratoga was about six and a half miles an hour, so that she was rapidly overtaking the tow. When she got within about 300 yards of the stern of the tow her pilot determined to pass on the eastward side of the tow—that is, between the tow and the dike, along which the tow was still passing—and he blew two whistles, to indicate to the pilot of the tow that such was his intention. To this signal he got no reply from the tow, but he kept on, putting his wheel to starboard.

The principal question of fact in the case is whether there was room between the tow and the dike, when the Saratoga made this movement, to justify her in attempting to pass on that side of the tow. The witnesses from the tow, except the pilot of the tug, put the distance at 20 to 30 feet, the pilot of the tug at 50 to 75 feet, and the captain, pilot and wheelsman of the Saratoga at 80 to 100 feet. I am satisfied that the witnesses from the canal boats have underestimated the distance, and that the Saratoga would not have attempted this manœuver if the tow had been within 20 to 30 feet, for it was evident that her pilot could not have expected the tow to get out of the way after he gave the signal and starboarded to get on the eastward side of her; but, on the other hand, it is evident from the testimony of those from the Saratoga that when she got up as she did, lapping the stern boat in the tow by about 40 feet, they found it impossible to clear the tow and pass between her and the dike.

The starboard guard of the Saratoga actually came in contact with the stern boat of the tow, while she was thus lapping and backing her engine to get herself out of the way. The witnesses from the Saratoga attempt to explain this by testifying that while she was thus lying still in the water, with her engine reversed, the tow sagged down with the wind some 40 feet against the Saratoga. This theory has no support except in the imagination of these witnesses. The proof is

that there was no such wind as would be necessary to make this change in the tow, and if there had been the tow, which kept on all the time, would have grounded or been windbound against the dike long before she reached the end of it. It is evident enough that the reason why, in trying to pass the tail of the tow, the Saratoga came in contact with it, was that there was not space between it and the dike for her to go in there without touching the tow. The evidence is that the water is deep close up to the dike, and if there had been room enough for her to go in there at all she would have left some space between herself and the tow.

The steamboat's witnesses also say that there was room enough there, but that when she got there they saw the McMahon change her course to the eastward, and that then, for the first time, they saw they could not get by, the difficulty being not that they could not pass the tow, but that if they passed the tow they could not afterwards pass the McMahon. There is not sufficient proof of the alleged change of course on the part of the tug, and if there were, as the same witnesses also say it had not been made long enough to affect the course of the tow, it would seem to furnish no justification for coming in contact with or so close to the stern of the tow, if there was room enough to avoid it. Upon the whole testimony I think there was not room enough to justify the Saratoga in attempting to pass on the port side of the tow, and that she was chargeable with negligence in getting into the position in which she found herself compelled suddenly to reverse her engine and back, while crossing the tail of the tow at a slight angle and close astern of it.

The testimony is that at this point the channel is narrow, and the swell from the wheels of a steamer is more dangerous than at points in the river where the channel is less contracted. There was room enough for her to go down on the starboard hand of the tow, as she did after backing out, leaving a clear space between them of 30 feet or more. Just below this point, also, the river widens out, so that, if she could not have safely passed on either side, it was her duty to wait till they reached a point in the river where she could

have safely passed. The effect of her backing, in so close proximity to the tow, was to raise a swell which dashed the canal-boats together with such violence that several of them, including the libellant's boat, were seriously damaged. There was no proof to sustain the averments of the answer that libellant's boat was unsound and unseaworthy.

The Saratoga is clearly liable for the damages sustained. *The C. H. Northam,* 13 Bl. 31.

The suggestion that the law of the state required the tow to keep on the western side of the channel is not material in the present case, since the tow being in the wrong place, if she was so, would not justify the steamboat in violating her plain duty to keep out of her way, having her in full sight, and being able to do so.

The position of the tow was not the cause of the injury.

Decree for the libellant, with costs, and a reference to compute the damages.